May it please the Court, my name is Adam Fox, and I have the privilege to represent two scholars, Dr. David Kinitz and Dr. Travis Solway. You may recall from the record that it used to be Mr. Kinitz, he's now received his Ph.D. They are appealing from a district court order that actually dismissed a lawsuit against them. So it's a little bit unusual here, but although they prevailed in the sense that the lawsuit that they didn't want against them was dismissed, and it's a point that the plaintiffs themselves underscored when they filed a notice of voluntary dismissal subsequent to the district court's dismissal only several days later, this was only a pyrrhic victory for these defendants that I represent. So do you think their motion for voluntary dismissal has any impact? I think it has an impact somewhat in favor of my clients, and that is it tends to indicate that they knew that there was no basis for the suit. They knew there was no basis to amend, to try and bring the claims again that should not have been brought in the first place. And I think that the reason why they voluntarily dismissed is because, and I'm speculating here, but I believe they were trying to extricate themselves from the prospect that we would be seeking the costs under the anti-SLAPP statute. I think it is a real tell, if you will, that they knew that they were potentially exposed, and because there is some in the California state case law, a little split of authority between the Coltrane line of cases and the Moore v. Liu line of cases in terms of what the impact of a voluntary dismissal is. I actually think both those lines of cases can be read, certainly by this federal court, this Court of Appeals, in a consistent manner, because when you look at Moore v. Liu, some of the criticisms that were made of the Coltrane line of cases was that, well, Coltrane created an exception, for example, of a voluntary dismissal where there wouldn't be fee shifting, and that example, one of the examples that was used in Coltrane was, well, perhaps it's a circumstance where the plaintiff determines the defendant is not solvent, and so they're not going to be able to get money there. And the Moore v. Liu case said, that actually doesn't cure the problem because the lawsuit may have been brought not for the legitimate purpose of trying to get damages, but simply to punish the defendants, just as we... I guess I have a question on the personal jurisdiction issue. Yes. If that's the basis for the court ultimately dismissing the case because there's no personal jurisdiction, how then can the district court handle the anti-SLAPP motion? Well, there's, I think, a couple of issues in there, if I can unpack it, Your Honor. First of all, the district court has the power, right? There's no question of subject matter jurisdiction, so the district court has the power over the case and certainly has power over the plaintiff, right? And so the defendant here, right, this is the classic collateral issue, right? And there are other courts which we've cited. There was the Wigington case, for example, it's a district court opinion which determined that a court certainly can still have power to, even lacking personal jurisdiction over the defendants, to award those defendants fees and costs. There's other cases that have determined, both in the anti-SLAPP context as well as with other statutes, that even when the court lacks subject matter jurisdiction, which is the much broader power to even exercise authority over the case, they still have the collateral or equitable authority to shift fees. And so here, consistent with what the United States Supreme Court certainly held in the CRST case, and which this court reinterpreted again or applied in the Amphistar case, is that there are some statutes that absolutely the court should exercise its fee-shifting authority in order to give the substantive effect to those statutes in question, and that includes both state and federal law. So it's no bar to the court's lack of personal jurisdiction, the district court's lack of It can't enforce something against them. But the court is still empowered by the California anti-SLAPP statute to exercise its authority, which that statute says needs to be broadly construed, to give teeth to the effects of that statute and literally punish and deter plaintiffs. So what would be your recommendation would be to what remand to the district court to conduct that analysis to determine whether or not the anti-SLAPP statute would be successful? What is your recommendation? I certainly wouldn't have a major problem with that, but I don't think that is even strictly necessary in this case, and let me explain why. I think a remand is likely necessary, but the remand could be for very limited purposes. So recall that the Well, but the district court didn't get into the analysis of the merits of the anti-SLAPP, did they? The district court did not explicitly address the anti-SLAPP motion other than to say it's But the district court's analysis absolutely, and this record is replete not only with what's in the record, but the district court's own findings, it's essentially already determined the two questions that need to be determined under the anti-SLAPP statute. Those two questions are whether the case itself, whether the complaint arises from protected speech, that's part one, and the second question that needs to be answered is whether the plaintiff has failed to demonstrate a probability of prevailing in the lawsuit, and in this case, it is quite clear that the suit, from the record, this suit arises from protected speech. The court held that there was probability in this case? So the probability, the probability question is the second prong, and that probability, it's been clearly stated by the Berry Court, the California Supreme Court, which is the final expositor of interpreting California law, has said that it doesn't have to be an on-the-merits determination. What that court said is simply, if you are not going to prevail in bringing this lawsuit, and in that case, it was a subject matter jurisdiction question, essentially, the Berry invoke this court's power to make a material change in the relationship, the legal relationship between the plaintiff and the defendant, then you have not prevailed, and that is exactly what happened here, albeit on a question of personal jurisdiction. So you never get to the merits? You don't need to get to the merits. Berry is quite clear on that. You don't need to get to the merits, and in fact, CRST, although not dealing with the case broadly, says it is a mistake to say you have to get to a merits-based question because there are many lawsuits in order to invoke that fee shifting where the plaintiff So, help me understand, what's the standard, assuming that the court has jurisdiction to entertain the anti-SLAPP motion, what's the standard for success in the anti-SLAPP motion? The standard for success, so again, there's just two prongs. One is that there has to be, that the suit, there's a determination that the suit arises from protected activity, right? And the second prong... Now protected activity means you've got to determine that it is non-defamatory? No, no, that actually... Why is defamatory speech protected activity? Defamatory speech is not protected activity, but the question is whether the suit even arises from it. You actually get that to Judge Fletcher, you actually get to that question about whether it's defamatory or not, whether it really is defamatory or not, when the plaintiffs have to show the probability of prevailing, and that's only if you get to the merits aspect of that. I'm not sure I agree with you that you don't do it at the question of whether it's protected activity because defamatory speech is by definition not protected activity. I think that if we look at the court's, the district court's record here to see what determinations were actually made, for example, the excerpts of record page four at lines 10 through 11, the district court recites, quote, plaintiffs bring this suit alleging defamation based on statements made in a scholarly journal article authored by defendants and published by a third party non-defendant. Even right there, that statement on its own... Yeah, I wasn't asking about this case, I was asking you about the standard. Okay, but we can, if the court will indulge me, starting from the specific and then to the more broad, I think in this case it's quite clear that this suit arises from protected speech not only because it falls within that common interest privilege which we discussed in our cases, it's statements made in a scholarly journal article, but even if there were something false... You know, I used to be a scholar. Yes. I've read an awful lot of scholarly journals that say an awful lot of C-R-A-P. I am familiar with that acronym. I completely agree and understand. What I was going to suggest as well is that there is the common interest privilege which generally attaches to statements... But I think to Judge Fletcher's point though, there has to be an analysis there, doesn't there? There has to be an analysis of what is that protected activity. To determine the standard, wouldn't we have to say that there has to be that analysis by the district court judge? I think perhaps in some cases, not in this one, and I think the scope of the analysis may differ. For example, I think there's a very clear difference between, if we move to the hypotheticals, if the statements here by my clients had been made on some blog, or if they had just stood out in a public square and said it. But those don't even fall within the common interest privilege. They made it in a journal article, and again, we can refer back to the acronym Judge Fletcher mentioned before. But once you make a statement in a scholarly journal article, and it's one that the court noted was for peer review, so it's reviewed by others, and then it was published by a third party, it doesn't fall outside of... It's quite clear the suit arises from protected speech, and the only thing that would make it not protected in that instance is if there were an exception to the common interest privilege in its application here. The common interest privilege does not attach to some statement that's just randomly made on some blog, or I see I'm at two minutes now, but I'll complete answering the question. It doesn't just randomly attach to any old statement, but if you're making it according to the common interest privilege in a scholarly journal article, or you're doing it in advance of academic interest and things of that nature, then it absolutely... That first prong is, in this case, would already be determined. In another defamation case that is not triggered by scholarly research in peer-reviewed journal, you may have a different answer. Do you want to reserve the rest of your time? I would. Thank you, Your Honor. Good morning, Counsel. Good morning, Your Honors, and may it please the Court. Robert Weisenberger on behalf of Dr. Nicolosi, Jr. and the Reintegrative Therapy Association. I want to start by just addressing that overarching question that seems to be in the Court's mind about, can you bypass the merits analysis of the anti-SLAPP motion in order to rule on... In order to basically award attorney's fees without actually substantively doing that analysis. And I want to start by noting that, in California, the current authority on the question of whether lack of personal jurisdiction boots the anti-SLAPP motion answers that question in the positive. In other words, there's only one case that actually addresses this specific issue in the personal jurisdiction context. That's the via view case. And it says that lack of personal jurisdiction means a concurrently filed anti-SLAPP motion is moot. So which case is that? That's the via view case. First, Canalap, 5th, 198. And we've got a couple of district court cases. Yes, we have several district court cases that also do the same thing. And they're split? District court cases? There's one Wigington case that is split, and it follows the Berry case, but I'll explain why it shouldn't in just a minute. And then there's, I think, two or three other district court cases that go the other way. Well, there's the Vess case, right? There's Vess case dealing with this notion in fees and the anti-SLAPP. Also, the ITN Flicks and the Collins case. Those two are unpublished, but Vess is published. Yes. And so, go ahead. I just want to make sure that we're all clear on what the world of cases that we're dealing And as long as we're getting clear as to where we are, the California Court of Appeal case you cited preceded Berry. It did. To the extent that Berry's inconsistent, that case is overruled. Except that I don't think... I mean, I understand the qualification you're about to make. I don't think it's overruled because... I made the qualification too. To the extent it's inconsistent. Yes. So, Berry addresses only subject matter jurisdiction. It knew about the via view case. It also knew about the line of cases that counsel was discussing earlier that there's a split in California and what happens when there's a voluntary dismissal prior to the anti-SLAPP motion being decided. And some of them, the majority of them, say it's dismissed as moot. There's one or two. There's a couple that say you can basically bypass it and award fees. So, the Berry case did not address any of those decisions. It didn't disapprove of them. It didn't approve of them. And it really didn't affect them because the Berry case only addressed subject matter jurisdiction. Now, I want to start with just a little factual discussion of Berry because it's a very unique factual scenario that is very different from our case. So, in that case, an attorney stipulated a certain state bar discipline. She then tried to seek relief from that discipline with the California Supreme Court. The California Supreme Court has exclusive jurisdiction over attorney bar discipline issues. The California Supreme Court denied relief. She then tried to circumvent the California Supreme Court by going to the Superior Court and was seeking relief down there. The state bar filed an anti-SLAPP motion and the Superior Court said that we have no subject matter jurisdiction. The Supreme Court has exclusive jurisdiction over these issues and granted the anti-SLAPP motion and the Supreme Court affirmed. Now, in state court... So, state courts are courts of general jurisdiction, right? So, jurisdiction is presumed. They have... Whereas in federal court, you have the opposite. Jurisdiction is not presumed. You have to establish jurisdiction. So, in state court, it's almost impossible to file in a venue where there's no subject matter jurisdiction unless you intend to file in a venue where there's no subject matter jurisdiction, which happened in the Berry case. So, if you file an admiralty or bankruptcy case in state court, you're going to get kicked out. There's no dispute over that. If you file a defamation action in probate court, you're going to get kicked out. If you file a personal injury action in family court, you're going to get kicked out. So, there's very limited scenarios where subject matter jurisdiction is a problem in state court because... You just listed quite a few of them. Because they're so broad, right? And it's almost undisputed. So, you have to almost intend. You do have and you have to intend, as she did in the Berry case, to file in the wrong jurisdiction. That... So, but in federal court, the opposite is true. There are many situations where subject matter jurisdiction can be uncertain and where it's disputed and you can even litigate a case all the way to the end, realize at the end that there's no subject matter jurisdiction and it gets kicked out. But here, counsel, let's just get a couple of things straight. First, RTA, the court has personal jurisdiction over RTA, correct? Yeah, I mean, they've... Well, after the voluntary dismissal, I don't know that they do, but they invoked the court's jurisdiction initially by filing the complaint. So, yes, presumably there's personal jurisdiction. And there's subject matter jurisdiction, correct? There is, yes. And the statute that they're seeking to enforce is one that would apply to them, correct? Well, which statute? The anti-SLAPP statute. The court is trying to... would be then having to enforce the anti-SLAPP statute pursuant to the motion that was filed in this case, correct? Yes. And so then what would be the problem with that? Yeah, so the problem is... I'm getting to that. So the problem is in... You can't have the same... Well, the problem is you have different rules in federal... You have the same rule... Subject matter jurisdiction in federal court is very broad, right? So you're going to be punishing... If you apply the anti-SLAPP statute the way that you do in Barry, there's a whole bunch of scenarios where plaintiffs may invoke the jurisdiction of the federal court, but jurisdiction is not certain, okay? And people oftentimes will file in a state where they have connections, where their attorneys are located. They may say, I will litigate this case in California, but it's not worth it for me to litigate this case in Texas or in New York or Canada where jurisdiction is more clear. And that's essentially what happened here, okay? But they will say, if I can get jurisdiction in California, it's worth it for me to move forward. So that preliminary analysis... So the anti-SLAPP statute in state court does not punish that group of people, okay? But in federal court, if the Barry-type rule is adopted, it would punish a very large group of people who are invoking the jurisdiction of the federal court, but they don't have a nefarious purpose, right? Because in state court, if there's no subject matter jurisdiction, you have a nefarious purpose. You're filing intentionally in a forum where there is no jurisdiction, which is what happened in Barry. That's not what happened here, and that's not what happens in a lot of cases in federal court where there is uncertainty about whether there's subject matter jurisdiction. But don't you think that the rules of whether there's personal jurisdiction in federal court are fairly clear? Yes, I do, and that's the next point. So if a lawsuit is dismissed because of lack of personal jurisdiction, isn't the defendant a prevailing party? No. In federal court, and this is the Milner case. I found a better site for it. So in federal court, dismissal without prejudice does not confer prevailing party status. That's the Milner case. I looked in the Milner case. There's a better site for that, and it's the Oscar, the Alaska Department of Education and Early Development case, and that site is a 2008 case in the Ninth Circuit, 5-4-1, Federal 3rd, 978, and the Penn site is 981, and it says voluntary or involuntary dismissal without prejudice does not establish that a defendant is a prevailing party. Then why wouldn't we do what I asked your friend on the other side, which is let's assume that we thought that there would be jurisdiction to hear this case. Why wouldn't we just remand back for the court to determine whether or not they are successful under the anti-SLAPP? Sure. So there you get into two problems. One is the advisory opinion problem. So if there is no jurisdiction, the court basically, if there's no personal jurisdiction, the court basically has to say... But of course you conceived that there is personal jurisdiction over your clients. Well, I think there has to be personal jurisdiction over the whole case. I don't think they can just say, well, there's personal jurisdiction over half of the parties, and so now we can entertain a ruling. So someone coming into court, affirmatively seeking relief in that court, is subjecting himself or herself itself to the personal jurisdiction in that court. Yeah. So that's what your clients did. So they've subjected themselves to personal jurisdiction of that court. Then the question is, okay, does the anti-SLAPP statute operate against them? But I don't think it's a jurisdictional question. I think it's an anti-SLAPP question. Yeah, there is an anti-SLAPP question there. So for one, you have to go back to, well, what should the rule be in federal court? Do we dismiss an anti-SLAPP motion as moot when there's no personal jurisdiction? The California authority on that issue says yes, and I think there's a very good reason... Now, would California authority... ...be a view case? Well, and that may or may not have been overruled by Berry. I don't think it was because it addressed personal jurisdiction and Berry addressed subject matter jurisdiction. But Berry is worded fairly broadly. I understand the issue in Berry was subject matter, but Berry talks more broadly than that. It does not specifically say, and this applies to personal jurisdiction, I get that. But it doesn't say subject matter jurisdiction, ticket for this day and train only. Correct. Although it also doesn't disapprove of any of the cases in California, and there are several of them that say the opposite, including a view case which says lack of personal jurisdiction moots the anti-SLAPP motion. So that is still the rule without that case being overturned. Well, maybe, and that's the question. Right, right. But in federal courts, it's a very good reason why you don't want to apply the same rule by subject matter jurisdiction doesn't apply here, because it's much broader that the impact of applying that type of rule where you just bypass the anti-SLAPP analysis would be much broader and have a much... It would punish a large group of people that the anti-SLAPP statute is not intended to punish. And then with regard to... The other issue is in federal court, anti-SLAPP motions are 12B6 motions. There's several Ninth Circuit cases that have stripped away everything from the anti-SLAPP statute except for attorney's fees and interlocutory appeal rights. Everything else, the discovery stay, the early hearing right, the legal standard is even stripped away. So under the Corby Civic case, at the pleading stage, you apply the same federal 12B6 failure to state a claim analysis to the anti-SLAPP motion. You don't do the separate state court analysis. Let me ask you this, and I realize it's not an anti-SLAPP question, it's a hypothetical question. Let's assume that we have someone who brings suit in federal court against a defendant from another jurisdiction and there's an argument by the defendant that there's no impersonal jurisdiction. As we're litigating the question of impersonal jurisdiction, including maybe some discovery and so on, the plaintiff engages in misbehavior. And the district court wants to impose sanctions against the plaintiff. Can the district court do that? Well, if there's a sanction statute that applies, yes, because... Well, I will assume that there has been misbehavior that's sanctionable under the federal statute. I can think of many right now, counsel. Sure. So does the fact that the defendant has sued someone over whom there's no personal jurisdiction protect the plaintiff from an attorney's fees sanction award? There has to be an adjudication on the merits. So if the activity falls under like a Rule 11 type sanction where it's a collateral issue to the merits, then yes. But here, anti-SLAPP attorney's fees have to be awarded pursuant to the substantive anti-SLAPP motion. And you actually have to determine, did this party prevail on their anti-SLAPP? In federal court it's, did the plaintiff state a claim? Or did they fail to state a claim? And if they didn't, then the attorney's fees motion, which hasn't been filed, never was filed in this case, becomes a collateral motion. If there's a substantive ruling, I would say at that point the attorney's fees motion is collateral to that motion. But without a substantive ruling, the attorney's fees motion is not collateral. But we can get a sanctions award against the plaintiff's attorney who misbehaves as we're litigating the questions whether there's impersonal jurisdiction over the defendant? Yes, because there is collateral jurisdiction over those types of issues. And that's the Cooter v. Gell case and there's a couple of others. So it sounds as though the court might have jurisdiction to decide the anti-SLAPP motion. The question is whether or not the California anti-SLAPP statute is intended to cover this. The final point I would make on that is, I don't think it can because of the Erie conflict problem. So in federal court, an anti-SLAPP motion is treated as a 12b-6. In federal court procedure, when a 12b-2 motion is granted, a concurrently filed 12b-6 motion is dismissed as moot. That's what the district court did here. And that's what it has to do to the anti-SLAPP because you have to pinion the anti-SLAPP statute and motion into federal court procedure. So where did Erie come from? I mean, why are you citing Erie? Because there's a conflict between federal court procedure and state procedure on this issue. In state court, you don't need... It's a separate motion. It's not just a demur. It's a completely different motion with a separate standard. But in federal court, the anti-SLAPP statute becomes a 12b-6 motion. It has to be pinioned into federal court procedure. And a 12b-6 motion is dismissed as moot when there is no jurisdiction, no personal jurisdiction over the case. So that's the reason. Your time is up, but if you want to make one final point... No, I think the last point I would just make is on the voluntary dismissal right of my client, which is there is... Rule 41, voluntary dismissal, is absolute. And it completely terminates the litigation as if there had been no litigation filed. In the AM Soccer Company case, it's very important on illustrating just how significant that right in federal court is to terminate litigation by filing voluntary dismissal. The court filed... I see I'm over my time, so I can stop. Any questions? I do. So even if it was dismissed, if this was a matter that the court could determine as part of our ancillary jurisdiction, even if you voluntarily dismiss the action, doesn't the court retain that ability to exercise ancillary jurisdiction and determine if attorneys' fees are awarded, if that's what we think it falls under? If there's ancillary jurisdiction, yes, but here there isn't because the anti-SLAPP motion hasn't been decided on the merits. It's been dismissed as moot. So if there's a sanction, like a Rule 11-type sanction, there is ancillary jurisdiction over that, but there's a whole line of cases, the Branson case and there's four or five other cases that we cite in our brief that say in the absence of jurisdiction over the case, the court cannot award attorneys' fees unless there's an independent grant of jurisdiction to award fees. Any other questions? All right, thank you. Thank you, Your Honor. And actually, that's a great place for me to pick up because in the Amphistar case, this court, in reading CRST, said that Branson and that entire line of cases was overruled by CRST. So what you just heard from my learned friend, I think is inaccurate, no longer states the law. I'd also like to draw the court's attention very briefly to the Gotsman v. Branson case. It's a district court opinion that we cited in our papers where it really breaks down the anti-SLAPP statute into two parts, right? There's the substantive, are we going to strike? And the court in that case said, well, the case has been dismissed. It was voluntarily dismissed in that case. The court said, so the anti-SLAPP motion is moot to the extent that we no longer have to strike that claim. But the court went on and said, so we're going to now go and address the fee question because that survives. I also think the analysis regarding Rule 11 is very instructive here. The Cooter and Gehl case the court's familiar with, we cited in our papers, very clearly sets forth that a baseless filing puts the machinery of justice in motion, burdening courts and individuals alike. I see my time's up. Just your final point. Yes, so the anti-SLAPP statute here is in some senses akin to the federal Rule 11, not in that it's a rule, but that it has a substantive aspect to it. But the important differences there are, Rule 11 has a safe harbor, right? So you give notice, and then someone can withdraw, and then the party that engaged in the bad activity, the baseless filing, can pull back and maybe not be exposed. California, in passing the anti-SLAPP statute 30 years ago, said, we think this is an important issue, not just to protect defendants from being sued, but to protect the courts and protect the public, and to encourage speech, to encourage speech in the marketplace of ideas. And in doing so, they offered a substantive right to defendants who the court in Barry said, it doesn't have to be an on-the-merits filing if it's not a lawsuit that has a probability of success. And certainly we know a lawsuit that has been dismissed for lack of personal jurisdiction has no probability of success. It doesn't have to be a merits filing. In those cases, as long as there's protected activity at issue from which the lawsuit arises, the fee shifting should occur. Thank you. Thank you. This case will be submitted. Thank you both for your arguments today. And at this point, I believe we are in recess. Thank you. I'll rise. This court for this session stands adjourned.
judges: FLETCHER, MENDOZA, Schreier